Case number 18-1589, David Kircher v. City of Ypsilanti, et al. Argument not to exceed 15 minutes per side. Ms. Okazinski, you may proceed for the appellant. Good afternoon. Good afternoon, your honors. Lisa Okazinski on behalf of Plaintiff Appellant David Kircher. I would like to reserve three minutes for rebuttal. So there's three topics that I would like to kind of highlight during oral argument with regards to the takings claim, unless there's anything in particular that the panel would like to ask me regarding the briefs. But the three topics that I will otherwise discuss with you are, one, that it doesn't matter that the city defendant sought authority to take Mr. Kircher's properties by going to the court as opposed to passing an ordinance. Second, the takings analysis has never been done by any court. And third, the importance of the Supreme Court's decision in Nickfee Township v. Scott to this case. So with regard to topic number one, that it doesn't matter that the city went to the court as opposed to passing an ordinance to take Mr. Kircher's property. That doesn't matter for the purposes of this case. The Supreme Court ruled in Pennsylvania Coal v. Mann that when a regulation goes too far, it will result in a taking. But there's a pretty well-understood exception to the takings clause that if you have a nuisance, the city's allowed to do something about it. You had a client that couldn't afford to pay for these repairs, and it seems odd to say there was a lack of process here. It seemed to take about 10 years of back and forth, lots of remands, and it seemed to me they were applying this very point that it was a nuisance, and then they have a whole other set of problems that arise when your client can't pay for the repairs, which is quite understandable. You don't get to keep the property if you can't pay for it, keeping it up. Yep, so correct. There is this nuisance exception to takings claims. And where there's a nuisance, the city is allowed to use its police powers to abate that nuisance. But there's a difference when the city uses when it's actually using an imminent domain power under the guise of using a police power. And that's one of the things. And to be precise, what you mean by that is when the costs went beyond abating a nuisance and went to improving its use? Correct, yes. That's a really tricky line, right, because everything that fixes the nuisance improves it economically, right? And that's where the importance of the takings analysis comes into play. The takings analysis has never been done by the court before, and that's what the federal court should have done. Whether it was you or your client, weren't they allowed in the state court to protest when the charges went beyond nuisance abatement? And weren't the state courts pretty attentive to those issues? I mean, you got a lot of remands, didn't you, and some victories? Yeah, there were some remands, but this kind of goes to the due process argument. A lot of my client was excluded from the property for years while this was all going on, and there wasn't any oversight from the court while the city was making these repairs. So while it was in there gutting the property, turning it into restaurants and lofts, my client was never given an opportunity to contest those repairs. It wasn't until after he was kicked out of the property they started making the repairs and renovations, and we got a remand from the... But there were remands, as Judge Sutton was saying. There were remands, right? And the court was frustrated, obviously, that at least the second time that the procedure they wanted wasn't followed, but then there were hearings after the fact on whether the expenditures were appropriate or not, and the court ultimately said that was okay, right? There were remands several years after the properties were taken, but with regards to due process, it requires an opportunity to be heard at a meaningful time in a meaningful manner. When you say that when the properties were taken, you're talking about the foreclosure sales on the weans? It's never been determined when the actual taking occurred, at what point in time... What would your position be on when the taking occurred? My position would be when the city took sole exclusive possession of the property. That would be, I think... So when a receiver was appointed, basically? Yeah, when they entered, when they took physical possession of the property. That would be... Because there's two types, right? That's when the taking occurred. That's when the physical taking occurred, yes. Actually, yeah, that's probably when the regulatory taking also occurred. But we're under two different theories here of a taking. One is the physical taking, and the second is the taking by regulation. I take it that in takings law, in this nuisance exception, we're looking to state law for the nuisance? What's a nuisance and what's not, and how to abate it? Is that a state law issue? Yeah, we're looking at... So if I can... In the takings analysis, it's a two-part analysis. One, the plaintiff has to establish a property interest, and secondly, that the property interest was taken. The nuisance exception that you're referring to goes to the first part. So my client, the plaintiff property owner, has to establish that a property interest exists. The burden then shifts to the defendant governmental entity to establish that that property interest does not actually exist because it's barred by background principles of nuisance and property law. And that's the analysis that has never been done in this case. For example... Why isn't it pretty darn close to say that analysis was done when you look at all the activity in those 10 years in the state court? Because the state court never looked at what property interests were taken from my client, an individual. So in this case, it was a categorical taking of all property rights. The right to possess, to exclude, to control, to enjoy, to dispose of, to make an income of. So all of those property interests were property interests that were taken from my client. Isn't that part of satisfying the lien? I mean, there's a lien out there. It's for repairs. It's a lien on the property. You are not paying for the repairs. So somebody can foreclose on the lien, which means they sell the property, right? And somebody else takes possession of it. Presumably, if there were proceeds left over, your client got those proceeds after the lien had been satisfied. But that's all of the bundle of sticks, right? Everything passes to the new owner, right? At that point in time, but the taking had already occurred. So whatever passed to the new owner was just the remnants of whatever was left. But at that point in time, the taking had already occurred. Those properties had already begun to be converted into different uses. And, for example, that's one of the property rights, the right to decide how your property- You weren't going to have title to the property anyway because of a foreclosure. What is the damage from the taking to the time of the foreclosure and a new owner has it? The- It's the- Basically, making Mr. Kircher foot the bill to revitalize these properties and revitalize the city. These- The city defendants have admitted- Paying for things beyond nuisance, right? Paying for things beyond nuisance. Exactly, exactly. That's exactly what you were challenging in the state courts, in which you won at several turns. Well, the state court wasn't looking at the takings analysis. I get it. I get it. I don't mind if the word taking is never used. But what I am saying is it seemed to me what was being fought out in the state courts was your client didn't want to pay for things that went beyond abating the nuisance. And I thought your client won on a lot of that. So it leaves me just really curious what's left of the case if we accept that nuisance is an exception to takings law. I guess what's left of the case is nobody has looked at what are the property interests that were taken from him in that process. So the fact that if they exceed the scope of what they can do and they go in there and they convert these properties into luxury lofts, into a sorority house, and then they get to the court of appeals and the court of appeals says, oh, no, you can't do that, and we send it back. At that point in time, the takings has already occurred. There is no, as Chief Justice Roberts said in the Nick decision, a bank robber may rob a bank and give the loot back, but the robbery still happened. Is that a due process argument or a takings argument? In other words, you started talking about takings, then my colleagues asked you some questions, you pivoted to due process, now it seems like we're back to takings. But I know you have a range of claims. Are you talking about the overall process that you weren't able to challenge, the overall process that was employed by the state courts? Yeah, and I'm sorry if I'm kind of conflating the two, but the due process argument is that these repairs and renovations were made to the property without any opportunity to object to them until long after they were made. So due process requires an opportunity to be heard in a meaningful place in a meaningful manner, and having that hearing or the evidentiary hearing occur long after the renovations or repairs have been made, the Court of Appeals has remanded, sent it back, and there's already a foreclosure action, at that point in time, giving him a hearing at that point in time was not due process. So that's the due process argument. The takings argument is that when the city came in and took exclusive possession of these properties with the intent to renovate them and rehabilitate them and turn them into uses that Mr. Kircher had never intended, that's when the taking occurred. And it doesn't matter that the Court of Appeals eventually reversed them and said you can't do that. At that point in time, the taking had already occurred, and my client was entitled to just compensation, not to get the properties back in the condition they were otherwise. What is the recognizable federal takings claim when state law and state courts have corrected part of the problem? I guess, Your Honor, I would disagree with you in the statement that the court had corrected the problem. Corrected part of the problem. It seems to me you have to acknowledge that, right? Not with regards to the takings claim, and I think there seems to be a disconnect. So let me see if I can better explain it. The takings occurred at the moment that the city took physical possession of these properties. That's when the taking occurred. It didn't matter what the city did after that point. The takings had already occurred, and the only remedy for that is just compensation. So when you say the Court of Appeals remanded and corrected part of the problem, I think what you're getting at is due process. Tell me this. You have a nuisance that's quite dangerous to the neighbors. They give him notice, hearing, and so forth about trying to deal with it. He says, I don't have the money, I'm sorry. So the state takes control at that point. The minute they take control at that point, that's a taking. In other words, you have a federal taking claim at that point. You go right to federal court after Nick, and then you fight it out what the city has to pay the owner. Is that how you're looking at it? If it's a physical invasion of property... They do everything. They put red tape around it. The original owner can't touch it. The city is completely in control of it. So you've lost every stick in the bundle. As I understand your theory, your theory, even though it's clearly a nuisance, that you have a takings analysis that starts the minute the city does what I just said, and they may not have to compensate much, but there's some compensation that has to occur. I take it that's your position? You keep telling us we're not getting this, and the taking occurred the minute they arrived? That has to be your position. Only with regards to the analysis under a physical taking. The analysis under a regulatory taking... Let's make it simple. Physical taking, the federal court gets the case the minute the city takes over, puts red tape all over it. Then we have a federal court decide what value this is to the owner, perhaps deducting for some of the nuisance problems. I don't know, but that's what would happen at that point? Again, with regards to a physical taking. I would just preface that by saying there's not... How would it work? It would be the value of the property minus the cost to deal with the nuisance? How would it work? Or would you get the full? It was originally worth $150,000. Someone comes in and says, well, it's only worth $100,000 now. Give them $100,000 because you're occupying it. Is that how it would work? You would likely deduct whatever it costs to abate any nuisances. Why that? Why not just say, no, no, you just get someone that comes in fair market value. This thing used to be worth $150,000. It's really only worth $100,000 now given all the repairs it's going to take. The guy says, yeah, give me my $100,000 and you can continue to abate. Is that how you think this works? With regards to a physical taking, I would probably agree with you that... What's your case for that? What's your case for the fact that it's a dangerous piece of property and at the minute the city occupies it to prevent anyone from getting hurt, they've got to fork over the current value of the property to the owner. Tell me the case for that. Well, physical takings, I think, goes back to the Loretto case. I'm only asking physical takings, so just tell me the case. You think Loretto's that case? Loretto... This is the telephone thing, the little thing they put outside the window? Only because the reason I cite Loretto is because the Supreme Court has said that any time that there is a physical invasion of property, no matter how minute, just compensation is owed. So that is... Loretto was not a nuisance case. I'm quite confident of that. Correct. What's your case with a nuisance where the court says, hey, the Fifth Amendment's uncompromising, we figure out exactly what the property's worth at that point and the city has to pay it in order to take control and abate the nuisance? That's correct. The way the nuisance... What's the case? There are no cases like that. That's why only one portion of our argument is physical taking, because there is the Supreme Court precedent that says any physical taking, no matter how minute, is a taking entitling the owner to just compensation. That's only one argument. There is the authority to abate nuisances, but, for example, if you have a broken window, the city can't come in and fix that window and renovate your kitchen. It needs to be tied together, and that's what wasn't done in this case. They went in and not only abated nuisances, but said, hey, we're going to give this whole place a makeover. We're going to turn it into luxury lofts and a sorority house, and that's where we got away from abating this nuisance. That's where the categorical taking of all the sticks in the bundle... When did that taking occur? Because that was not when they initially declared it a nuisance. What's the date or time when this problem arose? You could go right to federal court editor Nick and say, voila, here's the taking, and I need compensation. Again, that's something I think needs to get decided, but our position would probably be when the city took possession with the intention to make the properties economically viable. So it's the same date. Physical and regulatory taking occurred the same date? Yeah. I would argue that it happened the same date because of the economically viable. Entering the property and taking sole possession of it for the purposes of making it economically viable. All right. We'll get your full rebuttal. Thanks for answering our questions. All right. Counsel for the appellee. May it please the court. Mary Massaran on behalf of the City of Ypsilanti Defendants. Mr. Kirscher raised a series of arguments before the district court and this court complaining essentially about two rulings of the district court. Its decision to stay the matter under younger abstention and its decision that raised Judicata Barr's Kirscher's constitutional claims. I'm happy to address the younger abstention issue if the court has questions. Do you agree that the younger abstention was erroneous now in light of Nick? No. I mean, if Nick had existed back then, he wouldn't have been able to abstain, right? No, I don't agree with that. I think that what Nick says is, you have a ripe constitutional claim and you don't have to exhaust state remedies. Nick did not overturn younger and other abstention doctrines that are based on different policies. It didn't address it at all. Excuse me. So you're saying that, okay, but I'm confused about why younger even applied here. Normally in a takings case back before Nick, you would dismiss the claim under Williamson County, right? Why did he abstain? What the district court said was there were parallel state proceedings. There's three elements under younger abstention. Is nuisance law criminal law in Michigan? Nuisance law is not criminal law. Younger, I believe, extends beyond criminal. The case I would cite is Huffman v. Purdue, I think, or Pursue, which is a U.S. Supreme Court case in the nuisance context in which younger abstention was applied. I'm happy to discuss it further. I'm not sure there's any remedy other than to get to the... Why wouldn't we just rewind the clock and say, under Nick, you can vindicate your rights in federal court. You agree Nick is retroactive, right? The problem with rewinding the clock, and it's an important problem and one that I believe is insurmountable, is that it would essentially override and reflect a grave disrespect on rulings and findings of the state court that bar this claim. And I don't believe anything in Nick suggests... Isn't that how Nick has to operate? Because Nick is always recognizing a federal constitutional right in the face of ongoing state proceedings. But Nick is not... You have to override younger or however you want to say the two coexist. Isn't that always the Nick circumstance, essentially? Nick specifically overruled Williamson. And Williamson was a ripeness decision. It dealt with the question of whether your federal constitutional claim was ripe before you had sought just compensation in the state courts. And what Nick said was, we didn't mean to do that because the net effect of that is, because the federal courts have always been and continue to be obligated to give respect and deference to factual findings that have been properly made in legal conclusions in state court, by the time you would get to federal court in your takings claim under Williamson, race judicata would bar it. So the court said, we're not going to do that anymore. We're going to allow you to bring that claim without pursuing just compensation first in the state courts. It didn't address all the various forms of abstention that exist. And so... Why wouldn't he have a better argument here? Because, I mean, he didn't even start the proceedings, right? This was a nuisance action that the city started. So it's not an inverse condemnation, right? So why would the abstention, why would abstention have applied? If Younger still can apply in the face of Nick, why would this be a case where it would work? Because it seems to me it would be a case where it wouldn't work. Because the federal courts, and this is a fundamental principle of federalism, have always embodied in various doctrines abstention analyses in order to avoid the clash between federal and state courts, to reflect the federal court's respect for the state court's right to have concurrent jurisdiction over federal and state claims. And what Nick said was not related to these abstention doctrines. It was related very specifically to the whole body of ripeness law. And so you might argue either way about what is... I just want to make sure I'm getting the debate, including the perspective of my colleagues. I get the point that post-Nick, it's not clear exactly how Younger operates in a takings claim. I get that. And maybe that's one of these things that has to be resolved down the road. But are we also debating... In other words, the abeyance order is still reviewable? Is that what we're also debating at this point? Is that what I'm hearing? We're debating whether it's reviewable? I would argue that it's not, because the clock has passed. And so what would the remedy be? And that's what we tried to put in our brief, that there is no authority, as far as I'm aware, from this court or the U.S. Supreme Court that has ever suggested that the federal courts can avoid the doctrines of race judicata when state proceedings have validly taken place. And I don't believe Nick says that. What are we supposed to do with the general rule that constitutional decisions apply retroactively? How do we give effect to it? I don't believe there's a remedy that would suggest that this court could ignore the principles of race judicata. Nothing in Nick supports that reading. Nick is a very particular decision. It arose in a different context. I would have thought your answer was a little different. I would have thought your answer was that it happens all the time, that there are preliminary injunctions and TROs that last, for example, for six months in connection with constitutional claims, where the constitutional claim does not suffice for the preliminary injunction. At the end of six months, you move on to the merits. You don't decide what to do about the six months that has come and gone.  And in this case, you would move on to the merits. What would the merits be? The merits would be... Whether there's a taking. Whether there's a taking, exactly. And maybe that's sort of the obvious way and maybe the clearer way of saying what I was trying to say, which is, at this point, the issue, the only issue that remains for the court is the question of whether there is a takings claim. And the district court properly concluded there is not because there is a nuisance exception. There's no question about a nuisance exception. And in this case, the state courts have made legal rulings and factual findings... What about the point... I mean, the thing that helps you is that the owner, original owner, was allowed to challenge costs that seemed to go beyond abating the nuisance, wins on some of those, but it's pretty hard to say that was a takings analysis in the sense of regulating too far. I mean, that's just not the way they were looking. So does one just say they're coextensive? Anything beyond nuisance amounts to taking, and the state courts were limiting all the costs to nuisance. I don't know. I'm trying to figure out what to do with that. I think they absolutely are coextensive. That is, if you have held that the expenses are validly incurred to abate a nuisance, which the state courts have held and upheld and narrowed and reformed through all of this litigation, but at the end of the day concluded these expenses were validly related to abating a nuisance, then that can't amount to a taking. But what about the... So my recollection is there were 50 grand or something of nuisance expenses on one of the properties, but then when it gets foreclosed on, the amount of the lien includes all of the other work that was put into it, right? And there's a big difference in my mind between foreclosing and saying you've got to pay 50 grand to redeem this property, essentially, or 250, right? I mean, so why isn't it inappropriate for somebody to have foreclosed on the property when most of the expense wasn't nuisance abatement? Well, I agree that there was a change. I don't agree with the conclusion that most of the expense was not nuisance abatement. And let me try to explain that if I could. I would just modify the question then. Anything that was not nuisance abatement, why don't they get a right at that? Because there wasn't anything in that category. Because once the state courts went through the analysis and after the remands requiring the district court to very specifically... Or the circuit court, excuse me, and state court, to specifically identify what these expenses were related to... This was after the foreclosure, right? This was... So after the foreclosure of the property, somebody goes back in and says, oh, okay, no, those expenses were okay? After... It may have been after the foreclosure. It certainly was after the appeals. And I'd have to go back. I apologize. It's a long record. I've tried to study up on it. But what the court did was there was initially expenses that had to do with the initial list of repairs. Then there also were some 200 code violations in addition to that, which is why that dollar amount went up. So the state courts remanded and said, we're not going to allow you to use this foreclosure statute and to proceed in this manner insofar as you might be expending funds that are not specific to nuisance abatement. And we want to make sure of that. So they sent the case back to the circuit court and they said, list each municipal code violation, building code violation. Match up the expense. You show us that you have properly reviewed this. And when they did that, there were some expenses that were no longer allowed to be included as expenses that could be a basis for the foreclosure. And they said, those cannot be used in this fashion. But the bottom line... But it didn't change the lien amount, right? It wasn't like the plaintiff could go back in and say, okay, now that I have the new number, here's the money, I'll take my property back. At that point, he couldn't get his property back, right? Is that right under state law? I would think if the amount that they were allowed to charge and attribute to the lien should be diminished, he would change the amount of the lien. I think that's correct. And I don't think there's any showing that the plaintiff was ready, willing, and able, or even requested to change the lien amount. What the lien amount that was ultimately applied was on the basis of this review, as I understand the record. That's my understanding of reading that 2007 decision, the one that essentially affirms the foreclosure, but says go back, adjust the amounts, maybe, because some expenses are or are not included, and then if there are proceeds left over, then he gets the proceeds. But it doesn't say we're going to vacate the foreclosure sale completely and allow him to pay the new amount. One of those decisions did say we're vacating the foreclosure. The first one, not the 2007 one, but the decision before that? Or you're saying the 2007 one did? I thought it was the 2007 one, but when they said, no, you have to match these up with nuisance abatement in order to foreclose, they vacated the foreclosure. They sent it back. Is it your position then that that satisfied any procedural due process requirement? Absolutely. So put aside the taking. Is it that this back-and-forth remand, adjusting the lien amounts, all that, that was essentially a procedural due process? Absolutely. Absolutely. The state court's provided process, and I think it's important to note through all of this, the process was not. I'm sorry. Before I forget, was there any decision, though, in the courts? I know that he raised procedural due process. Was that ever rejected on the merits by any Michigan state court? The Michigan state courts rejected his constitutional claims, specifically the Fifth Amendment takings claim, but using that more generic language state claim, citing to the Fifth Amendment, the Fourteenth Amendment, and the Michigan constitutional. When you say generic language, what do you mean by that? Constitutional claims. They used that. They didn't go through and say substantive due process, procedural due process, and they referenced the Fifth and the Fourteenth Amendments. And what they said was, we're rejecting these claims, and they said it not only in the 2007 opinion, they also said it in the Ichesco opinion, which is cited in our brief. My recollection of the 2007 opinion is there is no mention of the Fourteenth Amendment or procedural due process. That footnote, it says, we're not going to decide any of the constitutional claims, and then it has a footnote that says, well, there's no taking under the nuisance exception, right? Footnote 22? Footnote 22 says there's no taking under the nuisance. That's absolutely correct. And also in the Ichesco v. Kerscher, which is a 2008 opinion, Michigan Court of Appeals, docket number 272905, the court again rejected these constitutional claims, saying while they had been raised, hardly any legal authority was cited, and Mr. Kerscher failed to show any factual support for the claims. So all of his claims were raised, and repeatedly the Michigan court said, you've raised these issues, you haven't shown any factual support to support that you have a claim, you haven't shown sufficient legal authority, and consequently we reject these claims. Let me clarify, I'm sorry. So in the 2008 decision, the procedural due process was specifically rejected? I don't have the exact language, but the constitutional claims, yes, and taking specifically. I'm concerned about procedural due process. I don't recall that it specifically said procedural due process. Can I just ask you, so I assume these aren't the only residences that the city has ordered to be abated in some context? I mean, are these abatements sort of regular and routine? I would say this. It is not unusual for this city or any city, I mean, you can go to any of the major cities, certainly in Michigan where I've litigated for 30 years, but around the country. I assume these sorts of challenges are pretty routine. In other words, just given the nature of building and repair work and construction, that there are always someone could step across the line when they're repairing one thing, they might repair something else. They might get into one project and it might lead them somewhere else. I mean, is it pretty routine to sort of see these issues litigated about what's being done as an abatement and what might constitute an improvement that might be more along the lines of taking or just kind of a one-off case? I would say this is an unusual case in the sense that it's gone on for more than 10 years. Ordinarily the municipalities that I've worked with over the years, including this one, try to have a more cooperative approach with property owners. And you can see in the early proceedings in state court, some of the hearings, there were initial show cause hearings and out of those hearings, the court ordered the city and Mr. Kersher's attorneys and Mr. Kersher come up with a list of what needs to be repaired. We want you both to work on these repairs. Problem in this case is that Mr. Kersher repeatedly refused to do that, failed to follow through and fought legally at every step of the way. And I mean, it would be probably better for him in retrospect if he had used the money to repair the property that he used trying to fight the city in the early stages, but he didn't do that. Ultimately receivers were appointed, repairs were done. The state courts have reviewed those repairs on multiple occasions. And out of that review,  I think that finding completely bars any takings claim because of the nuisance exception, which is well accepted under federal law. And I think the history of the remands and the care with which the state courts required these expenditures to be reviewed, refuse any potential for a procedural due process claim. Thank you. Appreciate your argument. Thank you. So Kosinski, you've got some rebuttal. I wanted to start by clarifying an answer I had given previously. You had asked me about physical takings and whether there was any case law that supports the nuisance abatement or nuisance, nuisance exception, not applying to physical takings. So there, there is no case law that holds that, but I think that's telling because the nuisance exception was a something that was the court had ruled applied to regulatory takings, physical takings like in Loretto or Lucas, the Lucas decision both said that physical takings, no matter how minute the intrusion constitute a taking and just a nuisance exception. The nuisance exception was, is there a case that you're just saying it's silence all around? Well, the nuisance, except Tahoe Sierra was the Supreme court decision where they said you, you can't apply a case law from regulatory takings and apply it to, to physical takings. They're two separate analysis. So I think that would, that's my answer to your question is there is no case law that says a physical takings, physical takings are a separate animal. Think about it. If you want to write a supplemental letter, you can, but it just seems really implausible to me that you could have a very dangerous building. I'm not your client, a slumlord, unwilling to help. The city's got to act. And as I understand your argument on a physical takings component, the minute the city occupies, it puts red flags around and tries to abate the nuisance. The person would have an automatic federal takings claim and could go right to federal court and could demand the value of their property. That seems just forgive me, utterly implausible, but I'm, I'm happy to be educated in two cases that I want to bring forward. Do you realize how beautiful that would be? The slumlord would get a building that was worth 150,000. They would cash out at 75 at that point. And the city would owe them 75,000. It would incentivize not abating nuisances because they would get cash for something that was not sellable. Well, that's just, you know, think about it. I mean, you can write me a, write us a letter, but just think about it. It just seems really hard to digest. Right. And all I'm getting at is there's just no case law to say that nuisance exception applies to physical takings. But if, if I can, just for a minute, there actually is a case where it involved a physical occupation of property. And that's the, the placer mining company, the United States 98 federal claims, 681 2011. And the plaintiff in that case alleged that the EPA caused a physical taking of property when it entered the property to abate a nuisance, but also took a bunch of other property rights. And the federal court of claims in that case denied summary disposition to the They needed to look at these other rights and that it was the property owner's right to access of the property, which was destroyed in the process of abating a nuisance. That was the issue in that. So it's. I mean, I, when you look, go back and look at it, it looks to me like they're talking about the non nuisance related property rights that were lost. That seems pretty fair to me. I couldn't agree more. You have two buildings and you're denied access to the other one and it doesn't have a nuisance that I get. What I don't get is the building that's dangerous. That one doesn't make much sense to me. Well in place or they're talking about the same property. And that's what, that's the analysis again, that hasn't been done here. So one of the property in order to determine the takings analysis, we need to look at each of those property interests that was taken. So I agree with you. If the property interest he's asserting is in fact a nuisance, then he doesn't have that right to begin with. It's not really a nuisance exception. It's just the right never existed, but there's a lot of rights that were taken from Mr. Kircher that he did have and that the city has not shown are, are somehow prohibited by underlying principles of nuisance and property law. For example, one of those interests is the right to decide how his property is going to be used. There was nothing unlawful about the Thompson building being used as a commercial property, as opposed to luxury loss in restaurants. That is one of the property rights that was taken from him. That has not been tied to any sort of nuisance exception. Same with the cross street building. It was a multifamily apartment complex. There was nothing unlawful or nuisance like about his right to use it for that purpose. But the city decided that it was going to turn it into a sorority house. And when it did that, it took that right away from him. And that's the analysis that has never been done. Same with the Perron property. That again was a four unit quadplex that the city decided it was going to turn into an upgraded two unit duplex. There was nothing nuisance like about it being a quadplex. But that was the right that was taken. The nuisance repairs though. The things that he had to admit that there were some things that were abating a nuisance, right? Yeah. Like the 50 grand on the cross street property, right? So why didn't he pay that? Well, first off, he never had an opportunity to review the bills that were sent. It was basically he got a bill and was told to pay it. In addition, the city didn't stop at 50,000. They continued to make these renovations while he still owned the property. This was long before the foreclosure actions. How much money did he end up paying for nuisance abatement? I don't know how much he paid or if he paid anything. I don't think it's anything, is it? I don't know that it's anything. Yeah, I don't think that it's anything. It's zero. Likely. I don't know 100%, but I know it's not much, if anything, and it may be nothing. Yeah. Okay. Thanks to both of you for your arguments. We appreciate your briefs and your arguments. Thanks for answering our questions, which we always appreciate. The case will be submitted, and the clerk may call the next case.